UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

MARVIN M. JARRETT #195706,

        Plaintiff,

v.

GEORGE PRAMSTALLER, et al.,

        Defendants.

Case No. 2:08-cv-173

HON. R. ALLAN EDGAR

**OPINION**

### I. Facts

Plaintiff Marvin M. Jarrett #195706, an inmate currently confined at the Baraga Max. Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Chief Medical Officer George Pramstaller, Dr. Aster Berhane, Dan Wronski, R.N., Terry Malloy, Dr. William Borgerding, Health Unit Manager Gloria Hill, Nancy Hulkoff, R.N., Cathy Williams, R.N., Dr. Fernando Frontera, Sandra Whaley, R.N., and Ann Morin, R.N.

Plaintiff's complaint alleges that in August of 2005, he began experiencing head pain, blurred vision and muscle weakness. Plaintiff was evaluated by Defendant Berhane, who believed he might be suffering from myasthenia gravis. Defendant Berhane ordered that Plaintiff's blood be tested by an offsite laboratory, and requested that Plaintiff be evaluated by a neurologist. The blood tests results were normal, but Plaintiff was advised by Defendant Wronski that only one-half of the testing was completed, which caused the tests to be normal. Additional tests were not approved. Plaintiff states that although he is continuing to experience the same symptoms, he is receiving no

1

treatment. Plaintiff also complains that he often does not receive his prescribed cholesterol medication from the medical staff.

Plaintiff claims that defendants' actions violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

## II. Analysis

### A. Standard of Review

Presently before the Court are the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), and/or Motions for Summary Judgment, pursuant to Fed. R. Civ. P. 56. (Docket #35, #67, #76, and #80.) Plaintiff has filed a response and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment

motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

### B. Failure to exhaust administrative remedies

Initially, Defendants Pramstaller, Wronski, Malloy, Hill, Hulkoff, Morin and Frontera state that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit

3

repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PRLA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral

resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶ P. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ X.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ GG. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ X. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id* at ¶ HH.

Defendants Pramstaller, Wronski, Malloy, Hill, Hulkoff, and Morin note that Plaintiff filed grievance number AMF 2006-03-843-12e1 on March 7, 2006, claiming that an unnamed nurse

5

did not give him his medications on the morning of March 2, 2006. The nurse told Plaintiff that he would not be given his medications until he took a scheduled diagnostic test, which he had refused earlier that day. Defendant Hill responded to the grievance and stated that Plaintiff had been taken off his unit and refused to take his medications in bulk for self-administration. Defendant Hill also noted that, due to Plaintiff's persistence, health care reinstated unit dosing and Plaintiff was receiving his medications. Plaintiff failed to name Defendants Pramstaller, Wronski, Malloy, Hill, Hulkoff, and Morin in his step I grievance. (Defendants' Exhibit 1, docket #36.) Defendants Pramstaller, Wronski, Malloy, Hill, Hulkoff, and Morin also assert that Plaintiff did not name them in any other grievance he filed regarding the allegations in his complaint. However, Defendants Pramstaller, Wronski, Malloy, Hill, Hulkoff, and Morin fail to offer a copy of a grievance inquiry or to otherwise support this assertion.

Defendant Frontera attaches copies of grievance numbers AMF-05-12-03419-12F, AMF-06-01-00022-12F, AMF-06-01-00116-12D3, AMF-06-03-00770-12F, AMF-06-03-00820-12F, and AMF-06-03-00843-12E1 to his brief and asserts that he is not named in these grievances. (Defendants' Exhibits C-H, docket #67.) In his responses to the motions, Plaintiff lists each of the grievances named in Defendant Frontera's brief and states that he pursued each one to step III. It appears that these are the grievances Plaintiff is relying on to support his claim.

In the step I grievance numbered AMF-05-12-03419-12F, Plaintiff names "R.N. Nancy." However, because the grievance copy offered by Defendant Frontera is poor, the court is unable to determine who else might be named in this grievance. (Defendants' Exhibits C, p. 5, docket #67.) In the step I grievance numbered AMF-06-01-00022-12F, Plaintiff names "R.N. Williams" and "AMF Doctor." (Defendants' Exhibits D, pp. 6-7, docket #67.) In the step I grievance numbered AMF-06-01-00116, Plaintiff names "AMF Doctor" and "MBP Doctor Berhane."

6

(Defendants' Exhibits E, pp. 6-9, docket #67.) In the step I grievance numbered AMF-06-03-00770-12F, Plaintiff names "Dr. G. Pramstaller" and the "AMF Doctor." (Defendants' Exhibits F, pp. 6-7, docket #67.) In the step I grievance numbered AMF-06-03-00820-12F, Plaintiff names "R.N. Whalen," "Officer Tollefson," "R.N. Hulkoff," "Nurse Ann," and "the Doctor." (Defendants' Exhibits G, pp. 6-8, docket #67.) Finally, in the grievance numbered AMF-06-03-00843-12E1, Plaintiff names "R.N." and "this Nurse." (Defendants' Exhibits H, p. 7, docket #67.)

Defendant Frontera asserts that because Plaintiff does actually not use his name in any of the grievances, they do not serve to exhaust administrative remedies as to him. However, because Defendant Frontera was the doctor at AMF during the pertinent time period, referring to him as "AMF Doctor" is sufficient. In addition, in the step I response to grievance number AMF-06-03-00770-12F, the doctor is identified by the respondent as Defendant Frontera. ((Defendants' Exhibits F, p. 6, docket #67.) Therefore, Defendant Frontera is not entitled to summary judgment for lack of exhaustion. In addition, the court notes that Plaintiff also appears to have exhausted his claims against Defendants Pramstaller, Berhane, Hulkoff, Williams, Whaley, and Ann Morin. Therefore, they are not entitled to summary judgment for lack of exhaustion. However, because it does not appear as if Plaintiff ever named Defendants Wronski, Malloy, Borgerding, or Hill in his grievances, these Defendants are entitled to summary judgment for lack of exhaustion.

**C. Eighth Amendment claims**

Defendants Frontera and Berhane contend that they are entitled to summary judgment because Plaintiff has failed to show that they violated his Eighth Amendment rights. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with

7

contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In Plaintiff's complaint, he alleges that Defendant Berhane told him that he might have Myasthenia Gravis (MG) on September 13, 2005, and that he should be evaluated by a neurologist. Defendant Berhane had a nurse do a blood draw in order to test for MG on September 20, 2005. Shortly thereafter, Defendant Berhane left MBP to take another job. As noted by Defendant Berhane, these allegations fail to support an Eighth Amendment claim.

Defendant Berhane also offers his affidavit, in which he attests that Plaintiff consented to have his blood drawn and tested for MG. (Defendants' Exhibit B, ¶ 10, docket #80.) In addition, Defendant Berhane offers excerpts from Plaintiff's medical records, which show that Plaintiff was evaluated by Defendant Berhane on September 13, 2005, and that he was receiving Inderal, Hydrodiuril, and Mevacor, and that he had requested an acetylcholine receptor AB test be performed in order to determine whether Plaintiff had MG. (Defendants' Exhibit A, pp. 1-3, docket #80.) The subsequent progress notes are signed by other medical providers, and it appears that Defendant Berhane had no further involvement in Plaintiff's care. It appears that approval for the requested test was ultimately denied as unnecessary by other parties. (Defendants' Exhibit A, pp. 4-12, docket #80.) The court concludes that the above facts do not support Plaintiff's Eighth Amendment claim against Defendant Berhane. Therefore, Defendant Berhane is entitled to summary judgment.

With regard to Defendant Frontera, Plaintiff claims that he disagrees with some of the decisions made by Defendant Frontera about his prescription medications. Specifically, Plaintiff states that Defendant Frontera erred in discontinuing his Mevacor and substituting Vasotec for Inderal. Plaintiff also claims that he was denied his medications.

In support of his motion for summary judgment, Defendant Frontera offers copies of Plaintiff's medical records, which show that Defendant Frontera saw and / or addressed Plaintiff's

10

medical concerns at least seven separate occasions. (Defendants' Exhibit A, pp. 4-13, 15, 20-22, docket #80.) Moreover, Plaintiff was seen by numerous other health care professionals on other many other occasions. (Defendants' Exhibit A, docket #80.) According to Plaintiff's medical records, his Mevacor was discontinued on December 30, 2005, because his laboratory tests showed that he no longer needed the medication. (Defendants' Exhibit A, p. 6, docket #80.) In addition, Defendant Frontera attests that Plaintiff was switched from Inderal to Vasotec in order to eliminate a potential cause of other medical problems from which Plaintiff was suffering. In addition, Defendant Frontera determined that Vasotec and Inderal, which are both used to treat hypertension, would be equally effective in treating Plaintiff. (Defendants' Exhibit B, ¶¶ 7-9, docket #80.) Finally, with regard to Plaintiff's assertion that he was denied medications, the medical records for March 2, 2006, show that Plaintiff refused to take his medications for self-administration because he wanted to continue receiving unit dosage. (Defendants' Exhibit A, p. 14, docket #80.) After reviewing the records in this case, the court concludes that there is no genuine issue of material fact that Defendant Frontera acted with deliberate indifference to Plaintiff's medical needs.

### D. Personal Involvement

Defendants Pramstaller, Hill and Malloy claim that they are entitled to summary judgment because they were not personally involved in the underlying misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g.*

11

*Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Defendants Pramstaller, Hill and Malloy assert that the only roles they had in this action involve the denial of administrative grievances or the failure to act. Defendants Pramstaller, Hill and Malloy cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264, 120 S. Ct. 2724 (2000). Accordingly, the Court concludes that Defendants Pramstaller, Hill and Malloy are entitled to summary judgment for lack of personal involvement.

### E. Eleventh Amendment

Defendants Morin, Pramstaller, Wronski, Malloy, Hill, Hulkoff, Borgerding, Williams and Whaley assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[1] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803

---

[1] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

### F. Qualified immunity

Defendants Morin, Pramstaller, Wronski, Malloy, Hill, Hulkoff, Borgerding, Williams and Whaley also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As noted above, Defendants Pramstaller, Hill and Malloy were not personally involved in the alleged misconduct. Accordingly, they are entitled to qualified immunity. However,

14

Defendants Morin, Wronski, Hulkoff, Borgerding, Williams and Whaley fail to attach copies of Plaintiff's medical records or to otherwise show that they did not violate Plaintiff's constitutional rights. Because Defendants Morin, Wronski, Hulkoff, Borgerding, Williams and Whaley do not make any substantive argument with regard to Plaintiff's complaint, they are not entitled to qualified immunity.

### III. Conclusion

In light of the foregoing, the court concludes that the motions for summary judgment filed by Defendants Berhane and Frontera (docket #67 and #80) are granted on the merits. The motions for summary judgment filed by Defendants Hill, Hulkoff, Malloy, Morin, Pramstaller, Wronski, Borgerding, Whaley, and Williams (docket #35 and #76) will be granted, in part. Specifically, the court concludes that Defendants Wronski, Malloy, Borgerding, and Hill are entitled to summary judgment for lack of exhaustion, and that Defendants Pramstaller, Malloy and Hill may also be dismissed for lack of personal involvement. Finally, the court notes that Defendants Hulkoff, Morin, Whaley, and Williams are not entitled to summary judgment.

An Order consistent with this Opinion will be entered.

Dated: 2/16/2010  /s/ R. Allan Edgar
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE