UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARVIN M. JARRETT #195706,

        Plaintiff,                Case No. 2:08-cv-173

v.                                    Honorable R. Allan Edgar

GEORGE PRAMSTALLER, et al.,

        Defendants.

_____/

## OPINION

Plaintiff Marvin M. Jarrett, an inmate currently confined at the Marquette Branch Prison, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Chief Medical Officer George Pramstaller, Dr. Aster Berhane, Dan Wronski, R.N., Terry Malloy, Dr. William Borgerding, Health Unit Manager Gloria Hill, Nancy Hulkoff, R.N., Cathy Williams, R.N., Dr. Fernando Frontera, Sandra Whaley, R.N., and Ann Morin, R.N.

Plaintiff's complaint alleges that in August of 2005, he began experiencing head pain, blurred vision and muscle weakness. Plaintiff was evaluated by Defendant Berhane, who believed he might be suffering from myasthenia gravis. Defendant Berhane ordered that Plaintiff's blood be tested by an offsite laboratory, and requested that Plaintiff be evaluated by a neurologist. The blood test results were normal, but Plaintiff was advised by Defendant Wronski that only one-half of the testing had been completed, which caused the tests to be normal. Additional tests were not approved. Plaintiff states that although he is continuing to experience the same symptoms, he is receiving no

treatment. Plaintiff also complains that he often does not receive his prescribed cholesterol medication from the medical staff.

On February 16, 2010, the court granted summary judgment to Defendants Berhane, Frontera, Wronski, Malloy, Borgerding, Hill, Pramstaller, and Malloy, but denied summary judgment as to Defendants Hulkoff, Morin, Whaley, and Williams (docket #109). Presently before the Court is the Motion for Summary Judgment filed by Defendants Hulkoff, Morin, Whaley, and Williams pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf.*

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendants Hulkoff, Morin, Whaley, and Williams were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more

3

than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer*, 62 F.3d at 154-55; *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

In this case, Plaintiff claims that Defendants often do not give him his prescribed cholesterol medication. In grievance AMF 2005-12-3419-12f, Plaintiff complained that Nurse Nancy, presumably Defendant Hulkoff, had refused to distribute his cholesterol medication on December 23, 2005. (Defendants' Exhibit 1.) The step I respondent noted that Plaintiff's Mevacor prescription expired on December 5, 2005, and that because Plaintiff's lipids were within normal

4

limits, it was not necessary to renew his prescription. (Defendants' Exhibit 1, p. 6.) At step II, the investigation revealed that the medical service provider had reviewed Plaintiff's medical record on December 30, 2005, and had determined that the Mevacor should be discontinued because Plaintiff's lipids were within normal limits. In addition, the medical service provider noted that if Plaintiff continued to take the medication, he could suffer unnecessary side effects. (Defendants' Exhibit 1, p. 2.) On December 30, 2005, Dr. Frontera made the following note:

> crv chol and trig in 10/18/05 controlled chol 158, trig 115 alt 47, in 6/05 chol 144 trig 58 controlled doent [sic] need mevacor tr call so it was not refilll [sic] mevacor tr was from 9/05 - 12/05., pt was informed by phone call.

(Defendants Exhibit 2, 12/30/05 9:32 AM Progress Note.)

In grievance AMF 2006-01-022-12f, Plaintiff complained that his cholesterol medication was not delivered on December 29, 2005, and that when he asked Defendant Williams about his medication, she walked away. In response to this grievance, Health Unit Manager Gloria Hill responded that the medical service provider saw Plaintiff on December 28, 2005, reviewed his record on December 30, 2005, and discontinued his Mevacor. Hill further noted that review of Plaintiff's blood work indicated that Mevacor was unnecessary at that time. (Defendants' Exhibit 3, p. 5.)

In grievance AMF 2006-03-0820-12f, Plaintiff stated that Defendant Whaley, named as "Nurse Ann," refused to give him his medication on March 7, 2005. Plaintiff also claimed that Defendant Hulkoff was made aware of his complaint. In the step I response, L. Alexander, R.N., stated:

> The unit dosing of grievant's medication was stopped on 3-1-06. Grievant refused to take his medication cards from the nurse on 3-2-06. Although this grievant is fully capable of taking his medications himself, unit dosing will be reinstated. Issue resolved.

5

(Defendants' Exhibit 4, p. 4.)  On March 2, 2006, Kathleen M. Hornick, R.N., charted that Plaintiff had refused to take back his medications for self-administration and had stated that he did not want any of his medications.  (Defendants' Exhibit 2, March 2, 2006, 0:14 AM Progress Note.)

Plaintiff's medical records also show that on March 9, 2006, he was seen in health care services by Defendant Morin, after complaining that nurses were not bringing him his medicine.  Defendant Morin noted that Plaintiff had refused to take his medication on March 2, 2006.  Defendant Morin instructed Plaintiff that if he wanted his medications, he should file a kite and they would be brought to him.  (Defendants' Exhibit 2, March 9, 2006, 3:56 AM Progress Note.)  Later that day, Defendant Hulkoff placed Plaintiff back on unit dosing for his medications.  (Defendants' Exhibit 2, March 9, 2006, 1:52 PM Progress Note.)  However, the very next day, Plaintiff refused to take his medications.  (Defendants' Exhibit 2, March 10, 2006, 11:36 PM Progress Note.)

In response to Defendants' brief, Plaintiff asserts that Dr. Frontera wrongly discontinued his Mevacor.  However, as noted above, Dr. Frontera has already been dismissed from this action.  Moreover, the record shows that Plaintiff was removed from Mevacor because his lipid levels were normal.  Therefore, Plaintiff's allegations regarding the refusal to give him Mevacor amount to no more than a difference of opinion regarding his treatment.  In addition, the medical record shows that Plaintiff was not denied prescribed medications.  Rather, Plaintiff himself was responsible for the missing doses because of his refusal to take his medications.  The court notes that where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976); *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir.

2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). For the reasons set forth above, the court concludes that Defendants were not deliberately indifferent to a serious medical need.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, Defendants are entitled to qualified immunity.

7

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to the motion for summary judgment. Accordingly, the Motion for Summary Judgment filed by Defendants Hulkoff, Morin, Whaley, and Williams (docket #119) will be granted and this case will be dismissed in its entirety.

An Order and Judgment consistent with this Opinion will be entered.


Dated:      3/11/2011                    /s/ R. Allan Edgar
                                         R. Allan Edgar
                                         United States District Judge